UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VINCENT ANGEL RUIZ, JR,

               Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

Case No. CV 16-4157 JC

MEMORANDUM OPINION AND
ORDER OF REMAND

## I.   SUMMARY

On June 10, 2016, Vincent Angel Ruiz, Jr. ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; June 13, 2016 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 6, 2012, plaintiff filed an application for Disability Insurance Benefits alleging disability beginning on April 20, 2002 ("alleged onset date"), due to spondylosis, "myopasitis [sic]/myalgia," low back sprain/strain, irritable bowel syndrome ("IBS"), arthritis, and sciatica.  (Administrative Record ("AR") 11, 121, 140).  The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on December 3, 2014.  (AR 425-50).

On January 15, 2015, the ALJ determined that plaintiff was not disabled through March 31, 2010 (*i.e.*, the "date last insured").[1]  (AR 11-17).  Specifically, the ALJ found that during the Relevant Period:  (1) plaintiff suffered from the following medically determinable impairments:  history of colon cancer in December 2002, status post partial colon resection, chemotherapy and radiation therapy, and inflammatory bowel disease (AR 14-15); (2) plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months, and therefore plaintiff did not have a severe impairment or combination of impairments (AR 15-17); and (3) plaintiff's statements regarding the intensity, persistence, and limiting effects of symptoms were not entirely credible (AR 16).

On May 10, 2016, the Appeals Council denied plaintiff's application for review.  (AR 4).

///

///

---

[1]The ALJ determined that because plaintiff engaged in substantial gainful activity after the alleged onset date until September 2007, the relevant period of time at issue in plaintiff's case was actually October 1, 2007 through the March 31, 2010 date last insured ("Relevant Period"). (AR 13).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

3

1    experience, allow the claimant to adjust to other work that

2    exists in significant numbers in the national economy?  If so,

3    the claimant is not disabled.  If not, the claimant is disabled.

4    Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th

5    Cir. 2006) (citations omitted); see also 20 C.F.R. § 404.1520(a)(4) (explaining

6    five-step sequential evaluation process).

7    The claimant has the burden of proof at steps one through four, and the

8    Commissioner has the burden of proof at step five.  Burch v. Barnhart, 400 F.3d

9    676, 679 (9th Cir. 2005) (citation omitted).

10    **B.    Standard of Review**

11    Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

12    benefits only if it is not supported by substantial evidence or if it is based on legal

13    error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

14    2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

15    (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

16    mind might accept as adequate to support a conclusion." Richardson v. Perales,

17    402 U.S. 389, 401 (1971) (citations and quotations omitted).

18    While an ALJ's decision need not discuss every piece of evidence or be

19    drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning

20    with sufficient specificity and clarity to "allow[] for meaningful review." Brown-

21    Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal

22    quotation marks omitted); Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012)

23    (citation and quotation marks omitted); see generally 42 U.S.C. § 405(b)(1)

24    ("ALJ's unfavorable decision must, among other things, "set[] forth a discussion

25    of the evidence" and state "the reason or reasons upon which it is based");

26    Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196-97

27    (1947) (administrative agency determinations must be set forth with clarity and

28    specificity).

4

An ALJ's decision to deny benefits must be upheld if the evidence could reasonably support either affirming or reversing the decision.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).  Nonetheless, a court may not affirm "simply by isolating a 'specific quantum of supporting evidence.'"  Id. at 882 (citation omitted).  In addition, federal courts may review only the reasoning in the administrative decision itself, and may affirm a denial of benefits only for the reasons upon which the ALJ actually relied.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) despite the error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was drafted with less than ideal clarity.  Id. (citation and quotation marks omitted).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record.  Brown-Hunter, 806 F.3d at 492 (citations omitted).  When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that a reversal or remand is warranted because the ALJ materially erred in evaluating plaintiff's subjective complaints related to the Relevant Period.  This Court agrees.

### A.   Pertinent Facts

#### 1.   Plaintiff's Hearing Testimony

At the administrative hearing, plaintiff gave the following testimony about his impairment-related symptoms and limitations:

5

1      In or about October 2002, plaintiff was diagnosed with stage IV colorectal

2 cancer.  (AR 432).   In November or December 2002, plaintiff had cancer surgery,

3 and thereafter was treated with chemotherapy "for almost a year."  (AR 432).

4      Plaintiff's "lifelong" IBS symptoms were significantly exacerbated by his

5 colorectal cancer treatment.  (AR 433, 445).  Plaintiff had a "multitude" of

6 symptoms, including "constant bloating [and] gassiness," "rectal urgency,"

7 "episodes of . . . leakage, flatulence, [and] urinary [incontinence]," and sometimes

8 required "instantaneous" access to a restroom.  (AR 433-34).  Plaintiff found it

9 difficult to sit "for a period of time" and to walk because his stomach was "so

10 sensitive" and he felt like a knife was "stabbing" the inside of his stomach.  (AR

11 433).

12      During the period from 2002 until December 3, 2014 (*i.e.*, the date of the

13 administrative hearing), plaintiff experienced "multiple bowel movements" every

14 day.  (AR 435-38).  On average, plaintiff would have "six to 10" bowel

15 movements per day.  (AR 436).  Some days he could have "six to 18 [bowel

16 movements]" or more (such as when he had "diarrhea, loose stools").  (AR 435-

17 36).  The severity of his symptoms would fluctuate depending on the weather.

18 (AR 434, 437-38).

19      Due to his symptoms, plaintiff would not do any housework, and would try

20 to do only "about an hour of yard work during the day."  (AR 433-34).  Plaintiff

21 also had some difficulty lifting.  (AR 439).

22      When plaintiff worked as a security guard, his employer effectively

23 permitted plaintiff to work under flexible conditions that accommodated plaintiff's

24 symptoms.  (AR 439-41).  When plaintiff worked as an attorney for a short period

25 of time, the stress caused a dramatic increase in plaintiff's symptoms, which

26 impacted plaintiff's ability to "focus or concentrate" at work and made plaintiff

27 wake up to use the restroom up to four times in the middle of the night, which in

28 ///

turn caused plaintiff to fall asleep in the middle of the day and have difficulty staying awake and alert on the job.  (AR 441-42).

### 2.    ALJ's Decision

The ALJ's decision summarized plaintiff's testimony as follows:

> At the hearing, the [plaintiff] testified he was diagnosed with colon cancer in 2002 and underwent surgery.  Currently, he has constant bloating, difficulty walking, and urine urgency.  He testified he did not have a lot of warning when he has to use the restroom.  On average, he has 6-10 bowel movements per day, although there are days when he has less.  His bowel movements are worse with the change of weather.  He testified that bloating makes it difficult to move around.  The [plaintiff] further testified he is unable to perform housework, but he tries to do an hour of yard work.

(AR 16).  Immediately after the above summery, the ALJ wrote the following assessment of plaintiff's testimony:

> After considering the evidence of record, the undersigned finds that [plaintiff's] medically determinable impairments could have been reasonably expected to produce the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(AR 16).

Later in the decision, after a brief discussion regarding the weight given to certain medical opinion evidence, the ALJ concluded that plaintiff did not have any medically determinable impairment that was "severe" during the Relevant Period, explaining:

> In the present case, there is no evidence that the claimant had an impairment or combination of impairments lasting a period of at least

7

1  12 continuous months limiting his ability to function during the

2  relevant period of time at issue, between October 1, 2007 and March

3  31, 2010.  Collaboration [sic] by the medical record of the [plaintiff's]

4  allegations is required, as a claimant's testimony alone is insufficient

5  to support a finding of disability.

6  (AR 17).

7  **B.    Pertinent Law**

8  **1.    Step Two**

9  At step two, a claimant must present evidence of "signs, symptoms, and

10  laboratory findings"[2] which establish a medically determinable physical or mental

11  impairment that is severe and, at least, has lasted or can be expected to last for a

12  continuous period of at least twelve months.  Ukolov v. Barnhart, 420 F.3d 1002,

13  1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20

14  C.F.R. §§ 404.1508, 404.1509, 404.1520(a)(4)(ii); see also Bowen v. Yuckert, 482

15  U.S. 137, 148 (1987) (Secretary may deny Social Security disability benefits at

16  step two if claimant does not present evidence of a "medically severe

17  impairment").

18  Step two is "a de minimis screening device [used] to dispose of groundless

19  claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  An impairment is

20  "not severe" only if the evidence establishes a "slight abnormality" that has "no

21  more than a minimal effect" on a claimant's "physical or mental ability to do basic

22  work activities."[3]  20 C.F.R. § 404.1521(a); Bowen, 482 U.S. at 153-54 & n.11

23

24  [2]Medical "[s]igns are anatomical, physiological, or psychological abnormalities which

25  can be . . . shown by medically acceptable clinical diagnostic techniques."  20 C.F.R.
§ 404.1528(b).  "Symptoms" are an individual's own perception or description of the impact of a

26  physical or mental impairment.  20 C.F.R. § 404.1528(a).

27  [3]"Basic work activities" are "the abilities and aptitudes necessary to do most jobs"

28  including "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling,
(continued...)

8

1   (Social Security claimants must make "*de minimis*" showing that impairment

2   interferes with ability to engage in basic work activities) (citations omitted;

3   emphasis in original); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)

4   (citations and internal quotation marks omitted).

5       When reviewing an ALJ's findings at step two, the district court "must

6   determine whether the ALJ had substantial evidence to find that the medical

7   evidence clearly established that [the claimant] did not have a medically severe

8   impairment or combination of impairments." Webb, 433 F.3d at 687 (citing

9   Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference

10  usually accorded to the Secretary's application of regulations, numerous appellate

11  courts have imposed a narrow construction upon the severity regulation applied

12  here.")).

13          **2.      Evaluation of Claimant Symptoms**

14      When determining disability, an ALJ is required to consider a claimant's

15  impairment-related pain and other subjective symptoms at each step of the

16  sequential evaluation process.  20 C.F.R. § 404.1529(a), (d).  Accordingly, when a

17  claimant presents "objective medical evidence of an underlying impairment which

18  might reasonably produce the pain or other symptoms [the claimant] alleged," the

19  ALJ is required to determine the extent to which the claimant's statements

20  regarding the intensity, persistence, and limiting effects of his or her symptoms

21  ("subjective statements" or "subjective complaints") are consistent with the record

22  evidence as a whole and, consequently, whether any of the individual's symptom-

23  related functional limitations and restrictions are likely to reduce the claimant's

24  ───────────────

25      [3](...continued)

26  reaching, carrying, or handling; [¶] (2) Capacities for seeing, hearing, and speaking; [¶]
    (3) Understanding, carrying out, and remembering simple instructions; [¶] (4) Use of judgment;

27  [¶] (5) Responding appropriately to supervision, co-workers and usual work situations; and [¶]
    (6) Dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b); see Bowen, 482

28  U.S. at 141 (same) (citations omitted).

1    capacity to perform work-related activities.  20 C.F.R. § 404.1529(a), (c)(4);

2    Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *4-*9; SSR 96-7p,

3    1996 WL 374186, at *1-*5.[4]  When an individual's subjective statements are

4    inconsistent with other evidence in the record, an ALJ may give less weight to

5    such statements and, in turn, find that the individual's symptoms are less likely to

6    reduce the claimant's capacity to perform work-related activities.  See SSR 16-3p,

7    2016 WL 1119029, at *7-*8; SSR 96-7p, 1996 WL 374186, at *1-*3.  In such

8    cases, when there is no affirmative finding of malingering, an ALJ may "reject" or

9    give less weight to the individual's subjective statements "by providing specific,

10   clear, and convincing reasons for doing so."  Brown-Hunter, 806 F.3d at 488-89.[5]

11   This requirement is very difficult to satisfy.  See Garrison, 759 F.3d at 1015 ("The

---

13       [4]Social Security Rulings reflect the Social Security Administration's ("SSA") official
14   interpretation of pertinent statutes, regulations, and policies.  20 C.F.R. § 402.35(b)(1).  Although
     they "do not carry the 'force of law,'" Social Security Rulings "are binding on all components of
15   the . . . Administration[,]" and are entitled to deference if they are "consistent with the Social
     Security Act and regulations."  20 C.F.R. § 402.35(b)(1); Bray v. Commissioner of Social
16   Security Administration, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks
     omitted); see also Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and
17   function of Social Security rulings).  Effective March 28, 2016, the SSA issued SSR 16-3p which
18   superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA
     "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an
19   examination of an individual's [overall character or truthfulness] . . . [and] more closely follow
     [SSA] regulatory language regarding symptom evaluation."  See SSR 16-3p, 2016 WL 1119029,
20   at *1-*2, *10; see also 2016 WL 1237954, *1 (correcting SSR 16-3p effective date to read March
21   28, 2016).  SSR 16-3p became effective after the ALJ issued the decision in the instant case but
     before the Appeals Council denied review.  Nonetheless, the possible applicability of SSR 16-3p
22   need not be resolved here since the ALJ's evaluation of plaintiff's subjective complaints in this
23   case fails to pass muster whether SSR 16-3p or its predecessor, SSR 96-7p, governs.

24       [5]It appears to the Court, based upon its research of the origins of the requirement that
25   there be "specific, clear and convincing" reasons to reject or give less weight to an individual's
     subjective statements absent an affirmative finding of malingering, that such standard of proof
26   remains applicable irrespective of whether SSR 96-7p or SSR 16-3p governs.  See Burrell v.
27   Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014) (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th
     Cir. 1989), Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984), Johnson v. Shalala, 60 F.3d
28   1428, 1433 (9th Cir. 1995), and Molina, 674 F.3d at 1112).

clear and convincing standard is the most demanding required in Social Security cases.") (citation omitted).

An ALJ's decision "must contain specific reasons" for the weight given to the claimant's subjective statements, be consistent with and supported by the evidence in the case record, and be clearly articulated/sufficiently specific to make clear how the ALJ evaluated the individual's symptoms/the weight the ALJ gave to the individual's statements and the specific reasons for that weight.  SSR 16-3p, 2016 WL 1119029, at *9; SSR 96-7p, 1996 WL 374186, at *2, *4.  If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

### C.    Analysis

First, here, the ALJ's summary of plaintiff's testimony regarding subjective symptoms is at least incomplete.  For example, the ALJ wrote, in part, "Currently, [plaintiff] has constant bloating, difficulty walking, and urine urgency."  (AR 16).  At the hearing, however, plaintiff testified that his symptoms also included "constant . . . gassiness," "episodes of . . . [rectal] leakage, flatulence, [and] urinary [incontinence]," and explained that his difficulty with walking was due to a "stabbing" pain in his stomach.  (AR 433-34).  Moreover, the ALJ's statement suggests that plaintiff's testimony only addressed symptoms plaintiff was experiencing at the time of the hearing (i.e., "[c]urrently").  (AR 16).  Nonetheless, as noted above, plaintiff actually testified that he experienced one or more significant impairment-related symptom(s) during the Relevant Period itself (i.e., "across the period of time from 2002 until [December 3, 2014]").  (AR 435-38).

The ALJ also wrote that plaintiff "[o]n average [] has 6-10 bowel movements per day, although there are days when he has *less*."  (AR 16) (emphasis added).  Although plaintiff testified that the severity of his condition did fluctuate, plaintiff's testimony generally appears more accurately to reflect that

11

1   plaintiff's symptoms were more likely to be more severe than his average, rather

2   than "less." (See AR 434-38 ["[I]n a waking period day, I can have up to six to 18

3   [bowel movements] and I stop . . . counting after that, especially if I have diarrhea,

4   loose stools. . . ."]).  In addition, the ALJ's decision does not mention significant

5   and probative testimony which suggests that when plaintiff did try to work (*i.e.*, as

6   a security guard or attorney), he experienced impairment-related symptoms which

7   significantly impacted plaintiff's physical and mental abilities to work.  (AR 439-

8   42).  The ALJ's incomplete and/or incorrect characterization of plaintiff's

9   subjective complaints calls into question the validity of both the ALJ's evaluation

10   of plaintiff's credibility and the ALJ's decision as a whole.  See Regennitter v.

11   Commissioner of Social Security Administration, 166 F.3d 1294, 1297 (9th Cir.

12   1999) (A "specific finding" that consists of an "inaccurate characterization of the

13   evidence" cannot support an adverse credibility determination); Valenzuela v.

14   Astrue, 247 Fed. Appx. 927, 929 (9th Cir. 2007) (finding ALJ's credibility

15   determination unsupported by substantial evidence where it was based in part on

16   "inaccurate characterization" of claimant's testimony); see also Gallant v. Heckler,

17   753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ may not selectively rely on only the

18   portions of record which support non-disability) (citations omitted); Reddick v.

19   Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (error for ALJ to paraphrase

20   evidence in manner that is "not entirely accurate regarding the content or tone of

21   the record").

22       Second, the ALJ's boilerplate conclusion that plaintiff's subjective

23   statements were "not entirely credible for the reasons explained in [the ALJ's]

24   decision[]" is not sufficient to discount the credibility of any specific subjective

25   complaint – especially considering the ALJ's decision ultimately did not provide

26   any clear explanation of specific, permissible "reasons" for discounting the

27   credibility of plaintiff's testimony.  (See AR 15-17).  A general suggestion that

28   plaintiff's collective subjective complaints were in some manner inconsistent with

12

1   unspecified medical evidence discussed in other portions of the ALJ's decision is

2   not sufficiently specific to permit the Court to determine whether the ALJ

3   discounted plaintiff's credibility on permissible grounds.  See, e.g., Brown-Hunter,

4   806 F.3d at 494 (legal error where ALJ fails to link claimant's testimony ALJ

5   found not credible to particular parts of the record supporting non-credibility

6   determination) (citing Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014)).

7        Third, to the extent the ALJ ultimately gave less weight to plaintiff's

8   subjective complaints solely because the objective medical evidence did not

9   substantiate the *severity* of plaintiff's subjective pain or symptoms (AR 16-17), the

10  ALJ erred.  See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)

11  ("[O]nce the claimant produces objective medical evidence of an underlying

12  impairment, an [ALJ] may not reject a claimant's subjective complaints based

13  solely on a lack of objective medical evidence to fully corroborate the alleged

14  severity of pain.") (citation omitted); see also 20 C.F.R. § 416.929(c)(2)

15  ("statements about the intensity and persistence of [claimant's] pain or other

16  symptoms or about the effect [such] symptoms have on [claimant's] ability to

17  work" may not be rejected "solely because the available objective medical

18  evidence does not substantiate [claimant's] statements" ); SSR 16-3p, 2016 WL

19  1119029, at *5 (same); SSR 96-7p, 1996 WL 374186, at *6 (same).

20       Defendant nonetheless argues that the ALJ properly found plaintiff less

21  credible "on the basis of the lack of medical evidence" because "[p]laintiff []

22  provided no medical evidence demonstrating that his impairment had any effect on

23  his ability to work during the [Relevant Period]."  (Defendant's Motion at 8).  The

24  Court disagrees.  To the extent defendant is arguing that there was no objective

25  medical evidence in the record at all which showed that plaintiff had an underlying

26  impairment during the Relevant Period which could reasonably have produced

27  plaintiff's pain or other symptoms, the ALJ's decision specifically found

28  otherwise.  (See AR 14, 1).  To the extent defendant suggests that plaintiff was

13

1    required to present objective medical evidence in order to establish that during the

2    Relevant Period a medically-determinable impairment was, in fact, severe

3    (Defendant's Motion at 8), the Court again disagrees.  See SSR 16-3p, 2016 WL

4    1119029, at *10 ("At [step two], . . . individual's symptoms and functional

5    limitations [must be considered] to determine whether [claimant's] impairment(s)

6    is severe unless the objective medical evidence alone establishes a severe

7    medically determinable impairment or combination of impairments that meets

8    [the] duration requirement.") (footnote omitted); see also 20 C.F.R. §

9    404.1529(d)(1) (impact of claimant's impairment-related subjective symptoms

10   must be considered at each step of sequential evaluation process); SSR 96-7p,

11   1996 WL 374186, at *3 (same).  In the end, defendant appears to argue simply that

12   the objective medical evidence did not support the severity of plaintiff's alleged

13   symptoms which, as noted above, is not a clear and convincing reason for giving

14   less weight to any of plaintiff's subjective complaints.

15        While the record may, as defendant also argues (Defendant's Motion at 9),

16   contain specific conflicts between plaintiff's daily activities and plaintiff's

17   testimony that could impact the credibility of plaintiff's subjective complaints, the

18   ALJ did not find as much.  This Court may not affirm the ALJ's credibility

19   determination on a ground the ALJ did not himself invoke.  See Brown-Hunter,

20   806 F.3d at 492 ("[W]e are constrained to review the reasons the ALJ asserts.")

21   (quoting Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)); Treichler, 775

22   F.3d at 1103 (in affirming ALJ's credibility determination, reviewing court

23   "cannot substitute [its own] conclusions for the ALJ's, or speculate as to the

24   grounds for the ALJ's conclusions") (citation omitted).

25        Finally, since the administrative decision did not otherwise provide any

26   sufficiently specific reasons for discrediting plaintiff's subjective complaints, the

27   Court is unable to conduct a meaningful review of the ALJ's evaluation of

28   plaintiff's symptom testimony, and thus cannot conclude that the ALJ's errors

14

1  were harmless.  Cf., e.g., Brown-Hunter, 806 F.3d at 492 (ALJ's erroneous failure

2  to specify reasons for rejecting claimant testimony "will usually not be harmless").

3  This is especially true since the opinion of Dr. R. Fast, a state agency medical

4  consultant, suggests that plaintiff's significant impairment-related symptoms

5  during the Relevant Period, if fully credited, would reasonably support an ALJ

6  finding that plaintiff was disabled.  (See AR 33 [September 17, 2012 state agency

7  residual functional capacity assessment "additional explanation" that, in light of

8  "clearer" evidence of the severity of plaintiff's IBS-related symptoms, Dr. Fast

9  "inclined to . . . give [plaintiff] a less than sedentary RFC due to his frequent

10  urgent [bowel movements] and IBS which would erode a 40 hour work week at

11  any exertional level"]).

12      Accordingly, a remand is warranted, at a minimum, to permit the ALJ to

13  re-evaluate plaintiff's subjective statements.

14  **V.   CONCLUSION**[6]

15      For the foregoing reasons, the decision of the Commissioner of Social

16  Security is reversed in part, and this matter is remanded for further administrative

17  action consistent with this Opinion.[7]

18  DATED:  March 27, 2017                    /s/

19                                Honorable Jacqueline Chooljian
                                 UNITED STATES MAGISTRATE JUDGE
20

21

22  [6]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's

23  decision, except insofar as to determine that a reversal and remand for immediate payment of
   benefits would not be appropriate.  On remand, however, the Commissioner may also wish, as
   appropriate, to address the various medical records that plaintiff claims were not properly
24  considered.

25  [7]When a court reverses an administrative determination, "the proper course, except in rare

26  circumstances, is to remand to the agency for additional investigation or explanation."
   Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
27  quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy
   defects in the original administrative proceeding. . . ."  Garrison, 759 F.3d at 1019 (citation and
28  internal quotation marks omitted); see also Connett, 340 F.3d at 876 (remand is an option where
   the ALJ stated invalid reasons for rejecting a claimant's excess pain testimony).